UNITED STATES of America, Plaintiff–Appellee,

v.

Kelly CLAY, Defendant–Appellant. (Two Cases)

Nos. 89–30328, 90–30190.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1990.

Decided Jan. 30, 1991.

---

Mark R. Fuller, Idaho Falls, Idaho, for defendant-appellant.

Monte J. Stiles, Asst. U.S. Atty., Boise, Idaho, for plaintiff-appellee.

Before FLETCHER, FARRIS and BOOCHEVER, Circuit Judges.

FARRIS, Circuit Judge:

In this consolidated appeal, Kelly Clay argues that the district court erred in finding no excusable neglect for his failure to file timely notice of appeal. He also appeals his conviction and sentence for conspiracy to distribute cocaine. We find that we have jurisdiction of the appeals; we affirm in part but remand for resentencing.

From 1986 to 1988, the Drug Enforcement Agency investigated Clay and others for cocaine trafficking in Southeastern Idaho. After a series of undercover meetings and cocaine purchases, agents arranged for an informant to buy several kilograms of cocaine from Clay on March 24, 1987.

At the sale, Clay delivered approximately one kilogram of cocaine in exchange for $50,000. He was arrested and indicted for distribution of cocaine. He pleaded guilty and was sentenced to ten years in prison and a $10,000 fine.

On January 15, 1988, Clay was indicted for three more counts of distribution of cocaine and for conspiracy to distribute cocaine continuing from 1976 up to the date of filing. The government repeated the charges against Clay in a superceding indictment on February 11, 1988. On October 24, 1988, Clay pleaded guilty to involvement in the conspiracy from 1976 until November 1, 1987. The plea was conditioned on his right to move to dismiss.

Clay moved to dismiss on November 29, 1988, on the grounds that the indictment resulted from vindictiveness and violated

the Speedy Trial Act. The government dismissed the cocaine distribution counts on June 13, 1989. The court denied Clay's motions to dismiss the conspiracy count on July 31, 1989, and sentenced Clay on September 27, 1989 to ten years in prison to run concurrently with his prior sentence plus four years supervised release.

### 1. Notice of appeal

The district court entered final judgment against Clay on September 27, 1989. He thereafter had ten days to file notice of appeal. Fed.R.App.P. 4(b). The tenth day after entry of judgment was Saturday, October 7, and the following Monday, October 9, was Columbus Day, a legal holiday. Clay's last day to file timely notice of appeal was Tuesday, October 10. Fed.R. App.P. 26(a).

Clay's attorney was located in Idaho Falls, Idaho. He telephoned the court clerk in Boise on October 9, and asked whether he could file notice of appeal that day. The clerk told him that he could file the document in Pocatello, Idaho, the next day, but that the date of filing would be the date that the clerk in Boise received the document.

Clay's lawyer transmitted the notice of appeal to the court clerk in Boise on October 10 by facsimile. The cover sheet stated: "Please file this appeal—the original will be express mailed today. Call if questions result." There is no dispute that the clerk received the facsimile.

Clay's lawyer mailed the original on October 11, and it arrived in Boise on October 12. We remanded the appeal to the district court for a factual determination of whether there was excusable neglect for the late filing. After an evidentiary hearing, the court found no excusable neglect and refused to extend the time allowed for filing.

■ Clay appealed the district court's decision, arguing that the court abused its discretion in finding no excusable neglect. We need not reach that question. Under all the circumstances of this case, the clerk's receipt of the facsimile was the functional equivalent of filing notice of appeal.

Federal Rule of Appellate Procedure 3(c) provides that an appeal shall not be dismissed for informality of form or title of the notice of appeal. In considering Rule 3(c), the Supreme Court has stated that "if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316–317, 108 S.Ct. 2405, 2408–09, 101 L.Ed.2d 285 (1988). An imperfect notice of appeal may be sufficient to show the party intended to appeal, despite an irregularity in the form or procedure for filing. *Rabin v. Cohen*, 570 F.2d 864, 866 (9th Cir.1978). In such a case we have discretion to disregard the irregularity. *Id.*

There is no dispute that the court and the government had notice that Clay intended to file the appeal. The facsimile received by the court clerk contained all of the information required by Federal Rule of Appellate Procedure 3(c). In light of all the circumstances, Rule 3(c) was complied with. We have jurisdiction over the appeal.

### 2. Speedy Trial Act

■ Clay argues that the February 11, 1988, indictment violated the Speedy Trial Act, 18 U.S.C. § 3161(b), which provides in relevant part:

Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

Section 3162(a)(1) requires that the charges be dismissed if the time limit was not met.

Clay claims that the 1988 indictment should have been dismissed because it was "in connection with" the 1987 charge to which he entered a guilty plea, and was not returned within thirty days of the complaint in the 1987 case. We disagree. The Act applies only if the government fails to indict the defendant on a charge within

thirty days of bringing that charge. *United States v. Pollock*, 726 F.2d 1456, 1462 (9th Cir.1984). The 1988 indictment charged Clay with a different offense from that charged in the 1987 complaint. The Speedy Trial Act does not apply.

 Clay also argues that the government violated his due process rights by waiting until 1988 to charge him with offenses it knew about in 1987. We reject the argument. "[T]o prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *United States v. Lovasco*, 431 U.S. 783, 796, 97 S.Ct. 2044, 2052, 52 L.Ed.2d 752 (1977). The conspiracy in this case involved eight other defendants in addition to Clay. The government delayed bringing the second indictment against Clay because it was engaged in an ongoing investigation of the conspiracy. The delay did not violate Clay's due process rights.

·3. Vindictive prosecution

Clay argues that the government filed the 1988 indictment in retaliation for his refusal to cooperate with drug enforcement officers in their investigation. The record refutes his argument.

 A defendant alleging vindictive prosecution has the burden of showing an appearance of vindictiveness. *See Adamson v. Ricketts*, 865 F.2d 1011, 1017 (9th Cir.1988). The appearance gives rise to a presumption of vindictiveness, and the prosecution has the burden of showing that its decisions were justified. *Id.* at 1019. There is an appearance of vindictiveness when there is a reasonable likelihood that the prosecutor would not have filed charges but for hostility towards the defendant because the defendant exercised his or her legal rights. *United States v. Gallegos–Curiel*, 681 F.2d 1164, 1169 (9th Cir. 1982).

 Whether there is an appearance of vindictiveness is a question of fact. The trial court found that the government intended all along to pursue additional charges against Clay, and that its decision to continue its investigation and pursue additional charges preceded Clay's refusal to cooperate in the prosecution of his co-defendants. The district court also found that the Assistant U.S. Attorney did not tell Clay that filing a Rule 35 motion would result in filing additional charges. Rather, it found that he told Clay that additional charges would be filed against him regardless of whether he filed the motion. On the basis of these facts, the trial court found no appearance of vindictiveness. Nothing in the record suggests that its ruling was error.

4. Supervised release

The court sentenced Clay to ten years in prison to run concurrently with his previous term, plus four years of supervised release. He argues that he was not subject to supervised release because the statute authorizing that penalty was not yet in effect when he committed the offense.

 We reject the argument. Clay pleaded guilty to acts of conspiracy committed beginning in 1976 and continuing until November 1, 1987. We have held that the supervised release provision, Public Law 99–570 § 1002, 100 Stat. 3207, became effective the day it was enacted, October 27, 1986. *United States v. Torres*, 880 F.2d 113, 115 (9th Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990). Clay was therefore subject to supervised release.

5. Voluntariness of the plea

 Clay argues that the court should vacate his guilty plea because the district court accepted the plea without informing him that he would receive a term of supervised release. The court advised Clay that the maximum penalty was a $1,000,000 fine and twenty years in the custody of the attorney general. In fact, the maximum penalty was a $2,000,000 fine, forty years in the custody of the attorney general, and four years of supervised release. 21 U.S.C. § 841(b)(1)(B). Clay was sentenced to ten years in prison to run concurrently with his

prior sentence, plus four years of supervised release.

Before a trial court accepts a guilty plea it must inform the defendant of "the maximum possible penalty provided by law, including the effect of any special parole or supervised release term." Fed.R.Crim.P. 11(c)(1). However, "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). We therefore must determine whether the failure to inform Clay of the mandatory supervised release term affected his "substantial rights."

If Clay knew before pleading guilty that he could be sentenced to a term as long as the one he eventually received, then the failure to inform him of the supervised release term did not affect his substantial rights. *See United States v. Sanclemente–Bejarano*, 861 F.2d 206, 210 (9th Cir.1988) (harmless error analysis generally turns on whether defendant knew before pleading guilty that he could be sentenced to term as long as he received); *see also* Fed.R.Crim.P. 11(h) advisory committee notes to 1983 amendment (citing *United States v. Peters*, 588 F.2d 1353 (4th Cir. 1978) (harmless error where judge understated maximum penalty, but penalty actually imposed did not exceed that indicated in warning)). Clay knew when he pleaded guilty that he could receive up to twenty years in prison. Thus, we will vacate his plea only if he is subject to more than twenty years in custody.

Clay's sentence on its face does not involve custody for more than twenty years. However, Clay argues that the sentence leaves him susceptible to possible extension or revocation of his supervised release term which could result in custody for more than twenty years. In support of his argument Clay cites *United States v. Shar-*

*on*, 812 F.2d 1233 (9th Cir.1987). The defendant in *Sharon* was advised that he faced a maximum sentence of twenty-one years, but in fact faced a maximum of twenty-one years in prison plus special parole of three years to life. He was sentenced to ten years in prison and ten years of special parole.[1] The sentence appeared to be one year shorter than the twenty-one year maximum he was informed he could receive. However, 21 U.S.C. § 841(c) provided that a special parole term could be revoked, resulting in the defendant's being returned to prison to serve the entire special parole term with no credit for time already served on parole. If Sharon's special parole were revoked after he served his full ten-year prison term and more than one year of his ten-year special parole term, he would possibly have had to serve longer than twenty one years. Because Sharon was susceptible to serving longer than the maximum sentence of which he was advised, we vacated his plea.

This case is distinguishable from *Sharon*. Unlike in *Sharon*, there is no possibility that 21 U.S.C. § 841(c) can subject Clay to custody beyond the twenty-year maximum he was advised of. If Clay's supervised release were revoked on its last day, and he were compelled to serve four additional years in prison, his liberty would be restricted one day less than eighteen years, and his sentence still would be within the twenty-year maximum he was informed he could receive.

We reject Clay's argument that under *United States v. Molina–Uribe*, 853 F.2d 1193 (5th Cir.1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989), his supervised release could be extended to a life term pursuant to 21 U.S.C. § 841(c). Section 841(c) only authorizes conversion of the parole term to a term of imprisonment to be served without credit for special parole already served. Nothing

---

**1.** We do not distinguish *Sharon* on the basis that Clay's case involves supervised release rather than special parole. Other courts have found the two penalties virtually interchangeable for the purpose of analyzing the district court's responsibility under Fed.R.Crim.P. 11(c). *See, e.g., United States v. Barry*, 895 F.2d 702, 704 (10th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct.

3222, 110 L.Ed.2d 669 (1990) (distinction between terms special parole and supervised release insignificant); *United States v. Molina–Uribe*, 853 F.2d 1193, 1197–98 (5th Cir.1988), *cert. denied*, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989); *United States v. Smith*, 840 F.2d 886, 890 n. 3 (11th Cir.), *cert. denied*, 488 U.S. 859, 109 S.Ct. 154, 102 L.Ed.2d 125 (1988).

in the section suggests that a special parole term can be extended indefinitely.

We also reject Clay's argument that under *United States v. Sanclemente–Bejarano*, 861 F.2d 206, 210 (9th Cir.1988), his supervised release could be extended to a life term pursuant to 18 U.S.C. § 3583(e)(2). The defendant in *Sanclemente–Bejarano* pleaded guilty to possessing approximately ten kilograms of cocaine with intent to distribute. The district court informed him that the maximum penalty for the offense was life imprisonment. 861 F.2d at 207. We held that the court's failure to mention mandatory supervised release was harmless because the sentence of fifteen years in prison plus five years of supervised release did not exceed the possible life sentence of which the defendant was warned. *Id.* at 210. We stated that 18 U.S.C. § 3583(e)(2) authorized an extension of supervised release for as long as a life term. *Id.* at 209. Section 3583(e) provides in pertinent part:

> The court may ...
>
> (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post release supervision.

Because the defendant had been warned of the possibility of life imprisonment, we held that the failure to advise of the mandatory supervised release term was harmless error.

In *Sanclemente–Bejarano*, we did not discuss the effective date of 18 U.S.C. § 3583(e)(2). Although supervised release became available in this circuit on October 27, 1986, *see United States v. Torres*, 880 F.2d 113, 115 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990), 18 U.S.C. § 3583(e)(2) did not go into effect until November 1, 1987, and

does not apply to offenses committed before that date. The effective date note following section 3583(e) provides:

> Section effective on the first day of first calender month beginning thirty-six months after Oct. 12, 1984, applicable only to offenses committed after taking effect of sections 211 to 239 of Pub.L. 98–473, and except as otherwise provided for therein, see section 235 of Pub.L. 98–473, as amended, set out as a note under section 3551 of this title.

The effective date note at section 3551 states:

> Section 235 of Pub.L. 98–473 as amended ... provided that:
>
> "(a)(1) This chapter ... shall take effect on the first day of the first calendar month beginning 36 months after the date of enactment [Oct. 12, 1984] and shall apply only to offenses committed after the taking effect of this chapter...."

18 U.S.C. § 3551 (effective date note). The first day of the first calendar month beginning 36 months after October 12, 1984 was November 1, 1987. Section 3583(e)(2) did not go into effect until that date, and does not apply to offenses committed before that date.

Because the offenses to which Clay pleaded guilty occurred before November 1, 1987, section 3583(e)(2) does not apply. There is no possibility that Clay's supervised release will be extended under the section, and no possible scenario under which Clay could be in custody as a result of his sentence for more than twenty years. Clay's sentence cannot possibly exceed the maximum term that he was informed he could receive. The district court's failure to inform him of the mandatory supervised release term therefore was harmless error.

6. *Controverted facts in presentence report*

Clay argues that we should remand for resentencing because the district court failed to resolve controverted facts in the presentence report. We agree.

Clay contested various statements in the presentence report, including statements that the conspiracy charge was his second

offense, that the government dropped additional charges against him as part of a plea bargain, that he had been paid by his co-defendants not to cooperate with the government, and that he had been convicted of resisting arrest in 1974.

If a defendant alleges any factual inaccuracy in the presentence report, the trial court must make a finding as to the allegation or determine that no finding is necessary because the matter will not be taken into consideration in sentencing. Fed.R.Crim.P. 32(c)(3)(D). The court must append a record of its findings to the presentence report. *Id.* Strict compliance with Rule 32(c)(3)(D) is required, and failure to comply will result in remand. *United States v. Fernandez–Angulo*, 863 F.2d 1449, 1456 (9th Cir.1988).

The transcript of the September 27, 1989, sentencing hearing contains no decision by the court not to consider the controverted matters. The court did not append any factual findings to the presentence report. We therefore remand for resentencing in compliance with Rule 32(c)(3)(D).

Both parties shall bear their own costs.

AFFIRMED IN PART AND REMANDED.