**Alfonso RODRIGUERA,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 89–56205.

United States Court of Appeals,
Ninth Circuit.

Submitted June 3, 1991.*

Decided Jan. 14, 1992.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Alfonso Rodriguera, in pro. per.

Melinda L. Haag, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellee.

Before FLETCHER, CANBY and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Alfonso Rodriguera appeals the denial of his motion to correct his sentence following his plea of guilty to possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Because we conclude that 18 U.S.C. § 3583(e)(2), which authorizes the revocation or modification of supervisory release terms, applies to Rodriguera's sentence and creates the possibility of a sentence longer than the maximum of which he was advised, we vacate his sentence and remand to allow him to plead anew.

I

Rodriguera was charged with possession with intent to distribute two kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1). This charge arose out of the activities of Rodriguera and co-defendant Jose Villalobos–Rodriguez in connection with the sale of cocaine to an undercover

Drug Enforcement Administration agent on February 17, 1987. At the plea hearing of April 27, 1987, Rodriguera was advised by the district court and the Assistant United States Attorney that he faced a "maximum penalty of a fine of $250,000 and/or a five- to forty-year sentence coupled with a $50 mandatory penalty assessment." R.T. at 5–6. He was also advised that there were no special parole or similar terms involved. In fact, however, Rodriguera faced a mandatory minimum supervised release term of four years in addition to the penalties of which he was advised. *See* 21 U.S.C. § 841(b)(1)(B) (Supp. IV 1986). On June 15, 1987, the trial court sentenced Rodriguera to eight years imprisonment and ten years supervised release.

On June 19, 1989, Rodriguera filed a motion to vacate, set aside, or correct a sentence, pursuant to 28 U.S.C. § 2255. The district court denied that motion and Rodriguera timely appealed. We have jurisdiction under 28 U.S.C. § 1291 and review the legality of his criminal sentence *de novo*. *United States v. Whitney*, 785 F.2d 824, 825 (9th Cir.1986), *modified*, 838 F.2d 404 (1988).

## II

### A. *Authority to Impose Supervised Release*

Rodriguera argues that the district court lacked authority to sentence him to a term of supervised release because the version of 21 U.S.C. § 841(b) in effect at the time of his sentencing did not authorize supervised release or special parole terms.

■ Rodriguera committed his crime between October 27, 1986 and November 1, 1987. These dates are significant because on October 27, 1986, Congress enacted § 1002 of the Anti–Drug Abuse Act of 1986 (ADAA), Pub.L. No. 99–570, 100 Stat. 3207–2 to 3207–4 (1986), which amended § 841(b)(1) and mandates a supervised release term for Rodriguera's drug offense. November 1, 1987, on the other hand, marked the effective date of the provision from the Sentencing Reform Act of 1984, Pub.L. No. 98–473, § 212, 98 Stat.1987,

1999–2000 (1984) (codified as amended at 18 U.S.C. § 3583 (1988)), which addresses the implementation of supervised release terms. During the period between these two dates, there was considerable uncertainty concerning the imposition of supervised release terms for ADAA offenses because the provision for implementing supervised release terms had not yet taken effect. *See* 18 U.S.C. § 3583 effective date note (1988) ("Section effective Nov. 1, 1987, and applicable only to offenses committed after the taking effect of this section ..."). In view of the somewhat conflicting statutory language, it is understandable that there was some confusion in the colloquy between Rodriguera and the court concerning the potential imposition of supervised release.

This confusion has been resolved by the Supreme Court's subsequent decision in *Gozlon–Peretz v. United States*, — U.S. ——, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991). It is now clear that the ADAA's supervised release requirement became applicable to drug offenses specified by ADAA § 1002 on the date of enactment of the ADAA, October 27, 1986. *See Gozlon–Peretz*, 111 S.Ct. at 849; *accord, United States v. Torres*, 880 F.2d 113, 115 (9th Cir.1989) (per curiam), *cert. denied*, 493 U.S. 1060, 110 S.Ct. 873, 107 L.Ed.2d 956 (1990). In Rodriguera's case, the ADAA provision prescribing the penalties for his offense was codified as 21 U.S.C. § 841(b)(1)(B) (Supp. IV 1986) and provided for a five- to forty-year term of imprisonment followed by a period of at least four years supervised release, and/or a fine of $2,000,000. Because Rodriguera pleaded guilty to offenses committed during February 1987, after the ADAA took effect, we find that he was subject to its supervised release requirement.

### B. *Failure to Advise of Supervised Release*

Rodriguera also contends that the district court's failure to advise him of the

mandatory supervised release term at the time he entered his guilty plea constituted reversible error.

 By neglecting to inform Rodriguera that he would receive a term of supervised release, the district court failed to comply with Fed.R.Crim.P. 11(c), which requires the district court to determine that the defendant understands the maximum possible penalty provided by law, including the effect of any special parole or supervised release term. The rule further provides, however, that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). Therefore, we must determine whether the failure to inform Rodriguera of the supervised release term affected his "substantial rights." If Rodriguera knew before pleading guilty that he could be sentenced to a term as long as the one he eventually received, the error would be harmless. *United States v. Sanclemente–Bejarano*, 861 F.2d 206, 210 (9th Cir.1988). Thus, we will vacate Rodriguera's sentence only if he may be subject to more than forty years in custody.

While Rodriguera's sentence on its face does not involve more than forty years imprisonment, we must determine whether his sentence might be extended or his supervised release revoked so as to result in a confinement exceeding forty years. Prior to November 1, 1987, terms of postconfinement monitoring similar to supervised release were known as "special parole." These terms could be revoked under 21

U.S.C. § 841(c)[1] and could result in the defendant's being returned to prison to serve the entire special parole term without credit for time already served on parole. *See United States v. Clay*, 925 F.2d 299, 303 (9th Cir.1991). Similarly, 18 U.S.C. § 3583(e)(2)[2] now authorizes the modification or revocation of a supervised release term for offenses committed after November 1, 1987. Because, however, no statute addresses the revocation of supervised release terms for ADAA offenses committed *prior* to November 1, 1987, such as Rodriguera's, we must look to either 21 U.S.C. § 841(c) or 18 U.S.C. § 3583(e)(2) for guidance.

In a similar case involving drug offenses committed during this interim period, we turned to 21 U.S.C. § 841(c) to determine whether the failure to advise the defendant of the supervised release term before he entered his guilty plea constituted harmless error. *Clay*, 925 F.2d at 302–03. Reasoning that 18 U.S.C. § 3583(e)(2), which authorizes extension or modification of a supervised release term, did not take effect until November 1, 1987, the *Clay* court concluded that the district court's error was harmless under 21 U.S.C. § 841(c). Even if the defendant's supervised release were to be revoked under § 841(c), the court reasoned, the defendant's sentence would still be within the maximum term of which he was informed. *Clay*, 925 F.2d at 303–04.

Three weeks after *Clay*, however, the Supreme Court decided *Gozlon–Peretz*, indicating that 18 U.S.C. § 3583(e)(2) is the

---

1. 21 U.S.C. § 841(c) (Supp. IV 1986) provides in relevant part:
 A special parole term ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment.

2. That provision states:
 § 3583 *Inclusion of a term of supervised release after imprisonment*
 
 . . . .
 (e) *Modification of conditions or revocation—* The court may ...
 
 . . . .
 (2) extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision....
 18 U.S.C. § 3583 (1988).

standard to govern the implementation of Rodriguera's supervised release term. As discussed earlier, *Gozlon–Peretz* held that the ADAA's requirement of supervised release applies to offenses committed between October 27, 1986 and November 1, 1987. *Gozlon–Peretz*, 111 S.Ct. at 849. In so holding, the Supreme Court recognized that, although the Sentencing Reform Act provision regarding implementation of supervised release did not go into effect until November 1, 1987, Congress adopted the term "supervised release" from the enacted but not yet operational legislation for use in the ADAA. *Id.* at 848. "The reasonable assumption," the Court concluded, "is that when Congress adopted the ADAA and used the term 'supervised release' it knew of the full definition in the existing Sentencing Reform Act and legislated with reference to it." *Id.* Given the anomalous results which would be produced by requiring supervised release terms for these ADAA drug offenses without adopting standards to guide their implementation, it would have been reasonable for Congress to assume that the instructions on revocation of supervised release contained in 18 U.S.C. § 3583(e)(2) would apply to supervised release terms imposed for ADAA offenses.

Other parts of the *Gozlon–Peretz* opinion also hint that the collateral standards or rules addressing special parole, such as 21 U.S.C. § 841(c), should not apply to these interim period offenses:

> [W]e also reject the holdings of the District Court and some courts ... that, because the statutory provision for imposing and revoking supervised release did not go into effect until November 1, 1987, *the rules governing special parole should apply to crimes committed in the interim period before that date.*

*Id.* at 849 (emphasis added). The Court further speculated that the drafters of the ADAA "might well have concluded that in all such cases [involving drug offenses committed between October 27, 1986 and November 1, 1987,] the Sentencing Reform Act would be effective at the time the district court would begin to exercise its duties under the supervised release proce-

dures." *Id.* (citing Slawsky, *Looking at the Law*, 52 Fed.Probation 86 (June 1988)). The Court thus implied that the different effective dates can be reconciled by applying the Sentencing Reform Act's supervised release provisions to supervised release terms imposed for ADAA offenses committed during the interim period.

■ Therefore, we conclude that 18 U.S.C. § 3583, rather than 21 U.S.C. § 841(c), sets forth the standard to govern supervised release terms imposed for ADAA offenses specified in 21 U.S.C. § 841(b)(1)(B) and committed between October 27, 1986 and November 1, 1987. To the extent that this conclusion conflicts with *Clay's* holding that 18 U.S.C. § 3583(e)(2) does not apply to ADAA offenses committed during this interim period, *see Clay*, 925 F.2d at 304, we find *Clay* effectively overruled by *Gozlon–Peretz.*

In this case, Rodriguera was advised by the district court that the maximum possible sentence for his offense was forty years. The sentence he received was eight years in prison and ten years of supervised release. However, "[p]ursuant to 18 U.S.C. § 3583(e)(2), a supervised release term may ... be extended, potentially to a life term, at any time before it expires." *Sanclemente–Bejarano*, 861 F.2d at 209. Under the worst possible scenario, then, Rodriguera's liberty could be restricted for more than forty years and, thus, for a period longer than the maximum of which he was advised. Accordingly, the court's failure to inform Rodriguera of his supervised release term affected his substantial rights and requires that he is provided the opportunity to plead anew. *Cf. United States v. Sharon*, 812 F.2d 1233, 1234 (9th Cir.1987) (allowing defendant to replead because possible revocation of special parole could lead to a sentence longer than the maximum advised).

Appellant's sentence is VACATED AND REMANDED.