959 F.2d 243
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert J. MISKINIS, Defendant-Appellant.
 No. 90-50025.
 United States Court of Appeals, Ninth Circuit.
 Argued and Decided Dec. 6, 1991.
Decided April 10, 1992.
 
 Before JAMES R. BROWNING, FERGUSON and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Robert J. Miskinis appeals his conviction and sentence for engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848; conspiracy to aid and abet the manufacture of methamphetamine and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846; aiding and abetting the manufacture of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 18 U.S.C. § 2; and aiding and abetting interstate travel in aid of racketeering enterprises, in violation of 18 U.S.C. §§ 2, 1952(a)(3). We affirm the conviction, but vacate the sentence.[1]
 
 1. Estoppel
 
 3
 As an initial matter, Miskinis argues that the government is estopped from prosecuting him because government agents led him to believe that his conduct was lawful. If the government has indicated to a defendant that a particular course of conduct is lawful and the defendant has proceeded in reasonable reliance on the government's representations, subsequent prosecution for that conduct violates due process. See, e.g., United States v. Pennsylvania Industrial Chemical Corp., 411 U.S. 655 (1973); Raley v. Ohio, 360 U.S. 423 (1959); United States v. Tallmadge, 829 F.2d 767 (9th Cir.1987). On the facts of this case, however, the defense of estoppel was unavailable. Upon learning of Miskinis's proposed scheme, DEA Agent Yout told Miskinis that he could go to jail if he proceeded as planned. Moreover, a number of the routine business practices established by Miskinis, such as off-site deliveries, division of receipts to avoid reporting requirements, and warnings to customers regarding surveillance, strongly suggest that Miskinis himself did not believe that his conduct was lawful. Accordingly, neither of the two elements necessary for a finding of estoppel was present.[2] United States v. Hsieh Hui Mei Chen, 754 F.2d 817, 825 (9th Cir.), cert. denied, 471 U.S. 1139 (1985).
 
 2. Evidentiary Rulings
 
 4
 Miskinis challenges a number of the district court's evidentiary rulings. He contends that the cumulative effect of the district court's alleged errors denied him due process. See, e.g., United States v. McLister, 608 F.2d 785, 788 (9th Cir.1979). We disagree. Having reviewed the record, we conclude that only one of the challenged rulings was erroneous. The district court did not commit the multiple errors that form the basis of Miskinis's claim for reversal.[3] Cf. United States v. Castro, 887 F.2d 988, 998 (9th Cir.1989). As to the single erroneous ruling, we conclude that it did not prejudice Miskinis.
 
 
 5
 We review evidentiary rulings made over objection for abuse of discretion, United States v. Catabran, 836 F.2d 453, 456 (9th Cir.1988), and evidentiary rulings to which no objection was raised for plain error, United States v. Smith, 790 F.2d 789, 793 (9th Cir.1986). In the latter case, we may reverse only to correct an error that would result in a miscarriage of justice. United States v. Young, 470 U.S. 1, 15 (1985). In the former, we will reverse only if it is more probable than not that the error affected the verdict. United States v. Soulard, 730 F.2d 1292, 1296 (9th Cir.1984).
 
 A. Testimonial Evidence
 
 6
 Miskinis challenges the district court's decision to admit testimony by a DEA chemist, Skinner, and two law enforcement agents regarding the toxic fumes often encountered in methamphetamine labs and the high likelihood of fires and explosions. As part of his testimony regarding the methamphetamine lab seizures and subsequent arrests that ultimately led to the arrest of Miskinis, Detective Kitts testified that there had been an explosion and a fire at a location in Ramona and that the fire department concluded that the source of the explosion was a methamphetamine lab. Testimony concerning events that lead to arrests is relevant and admissible. United States v. Ray, 731 F.2d 1361, 1367 (9th Cir.1984). Accordingly, the admission of Detective Kitts's statement was not error. In contrast to Detective Kitts's testimony, the statements by Skinner and DEA Agent D'Ulisse regarding the hazards encountered by DEA agents were only marginally relevant to the charges against Miskinis. However, Miskinis's trial counsel failed to raise a contemporaneous objection to either statement. In light of the overwhelming evidence against Miskinis, we think it is clear that the admission of those statements did not result in a miscarriage of justice and was not plain error.
 
 
 7
 Miskinis next objects to testimony concerning the street value of methamphetamine, the quantities of methamphetamine sold by some of RJM's customers, and the total quantity and dollar value of the methamphetamine that could have been produced from the chemicals sold by RJM. He also objects to D'Ulisse's identification of a chart showing the withdrawal of over $300,000 from RJM's bank account immediately following service of a subpoena for account records. We find no merit to Miskinis's arguments. As the government points out, all of the testimony concerning dollars and quantities was relevant to the charges against Miskinis. Together with the testimony regarding the types of chemicals purchased by RJM customers, it tended to show that the chemicals were being used to produce methamphetamine. Similarly, the testimony of an RJM employee regarding chemicals that he had buried in the yard tended to show that the chemicals were intended for an illegal use.
 
 
 8
 Agent D'Ulisse also testified concerning the reputation of San Diego County as the methamphetamine capital of the United States, and produced a chart depicting the number of labs seized during some of the years in question. We think the government is correct that this testimony simply served to put the charges against Miskinis in context. United States v. Skillman, 922 F.2d 1370, 1374 (9th Cir.1990), cert. dismissed, 112 S.Ct. 353 (1991). Accordingly, the district court's decision to admit the testimony was not an abuse of discretion.
 
 
 9
 Finally, Agent D'Ulisse also testified concerning patterns of methamphetamine use and the progressive physiological effects of the drug. We agree with Miskinis that this testimony was irrelevant to the charges against him. However, given the overwhelming weight of the evidence and the fact that the district court interrupted D'Ulisse on its own motion before he had finished testifying on this issue, we find that admitting D'Ulisse's testimony was harmless error.
 
 B. Hearsay
 
 10
 Next, Miskinis challenges the district court's refusal to exclude certain statements as hearsay. The statements may be categorized as follows: (1) RJM customers testified that they had been told to buy from RJM or to request particular methods of payment and delivery; and (2) RJM employees testified regarding particular problems mentioned by RJM customers, including DEA surveillance and arrests.
 
 
 11
 We do not think that the admission of these statements was error. As the government points out, the testimony complained of was not introduced for its truth, but rather to establish the state of mind of each of the speakers. The testimony of RJM customers established their perceptions of RJM as an operation that would assist them in acquiring large quantities of the precursor chemicals for use in the production of methamphetamine and that they selected RJM because of its willingness to aid and abet their unlawful deeds. Similarly, the testimony of the RJM employees showed what information was available to them about their customers and about the nature of RJM's business. Cf. Castro, 887 F.2d at 1000. Because Miskinis was, on his own orders, kept informed of all significant purchases and other significant events, that testimony also tended to show what information was available to Miskinis about the activities of his customers. Accordingly, the statements were not hearsay and were properly admissible.
 
 C. Scope of Cross-Examination
 
 12
 Miskinis contends that the district court improperly restricted the cross-examination of Carol Calabrese, the RJM customer known as "Her". The court sustained objections to questions regarding the amount of methamphetamine that Calabrese used during the period in question and regarding her alleged involvement in the sale of cocaine. The court also disallowed questions pertaining to the substance of Calabrese's admitted perjury in her state trial on drug charges.
 
 
 13
 In determining whether the district court improperly restricted the scope of cross-examination, we must consider whether the jury was given " 'sufficient information to appraise the biases and motivations of the witness.' " United States v. Jenkins, 884 F.2d 433, 436 (9th Cir.1989) (quoting United States v. McClintock, 748 F.2d 1278, 1290 (9th Cir.1984), cert. denied, 474 U.S. 822 (1985)), cert. denied, 493 U.S. 1005 (1989). That test is met here. The cross-examination of Calabrese was extensive, and included questions about her conviction on state drug charges, her sentence, her decision to testify against Miskinis in exchange for immunity from federal prosecution, her hope that her testimony would induce the government to recommend reduced sentences for her husband and her brother, her lies to her probation officer, her personal use of marijuana, methamphetamine, and cocaine, her perjury during her state trial, and her lies to her own lawyer about the events at issue in Miskinis's trial. The district court did not abuse its discretion in concluding that Calabrese had been thoroughly impeached and that the additional questions at issue would merely prolong the trial. United States v. Komisaruk, 885 F.2d 490, 495 (9th Cir.1989) (district court may restrict cross-examination when further testimony on a particular issue would be " 'repetitive or only marginally relevant' ") (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).
 
 
 14
 D. Business Practices of Other Chemical Companies
 
 
 15
 Finally, Miskinis challenges the admission of testimony concerning the precautions employed by "legitimate" chemical companies on the ground that that testimony was "extremely prejudicial". The mere fact that evidence is prejudicial to the defendant does not bar its admission; "Rule 403 precludes only unfair prejudice." United States v. Layton, 855 F.2d 1388, 1402 (9th Cir.1988), cert. denied, 489 U.S. 1046 (1989). Unfair prejudice exists only if the prejudicial effect of a particular piece of evidence substantially outweighs its probative value. Id. In this case, evidence regarding the measures adopted by other chemical companies to control sales of known precursor chemicals was highly relevant to the charges against Miskinis, because it placed Miskinis's conduct in context and tended to show that Miskinis knew his conduct was unlawful. Accordingly, any prejudice to Miskinis caused by the admission of the testimony was not unfair.
 
 3. Sufficiency of the Evidence
 
 16
 Miskinis argues that the evidence was insufficient to support his conviction on three of the seven counts of aiding and abetting the manufacture of methamphetamine and one of the two counts of aiding and abetting interstate travel in aid of racketeering enterprises.[4] We will uphold a conviction against a challenge to the sufficiency of the evidence if " 'the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict.' " United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990) (quoting United States v. Soto, 779 F.2d 558, 560 (9th Cir.1986), cert. denied, 484 U.S. 833 (1987)).
 
 
 17
 Counts Six, Seven, and Nine of the indictment charged Miskinis with aiding and abetting various individuals in the manufacture of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Each count was based on the discovery of a fully operational methamphetamine lab containing chemicals and equipment purchased from RJM. In each case, the packaging labels on the chemicals had been removed, but DEA chemists traced the chemicals to RJM. Miskinis argues that although this evidence established a link between the lab operators and RJM, it was insufficient to establish his personal liability for aiding and abetting those particular methamphetamine operations. However, the government also introduced testimonial evidence establishing that Miskinis was informed of all significant purchases made at RJM, and that Miskinis had ordered his employees to remove the labels on all chemicals sold before delivering those chemicals to customers. A jury could reasonably infer from this testimony that Miskinis was aware of the purchases at issue in Counts Six, Seven, and Nine, and of the steps taken to conceal the fact that the chemicals had come from RJM. Accordingly, we conclude that there is sufficient evidence to support Miskinis's conviction as to those counts.
 
 
 18
 Count Thirteen charged Miskinis with aiding and abetting Robert Moran to engage in interstate travel in aid of racketeering enterprises, in violation of 18 U.S.C. §§ 2 and 1952(a)(3). Miskinis argues that the government produced no evidence, testimonial or documentary, relating to this allegation. However, an RJM employee, Bruce Storrs, testified that he ordered 4000 pounds of phenylacetic acid to be delivered to Carson City, Nevada, and that in early 1984 he sent Moran to Nevada to move the acid to two storage sheds.[5] Storrs stated that he discussed the decision to have Moran move the acid with Miskinis. Storrs further testified that in November, 1984, he sent Moran to Nevada to move the acid a second time, and that Moran was arrested. We find that Storr's testimony was sufficient to support Miskinis's conviction on Count Thirteen.
 
 4. Sentencing
 
 19
 At sentencing, Miskinis challenged a number of the factual findings contained in the presentence report. Federal Rule of Criminal Procedure 32 provides:
 
 
 20
 If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing. A written record of such findings and determinations shall be appended to and accompany any copy of the presentence investigation report....
 
 
 21
 Fed.R.Crim.P. 32(c)(3)(D). The district court made no such findings and determinations regarding the factual inaccuracies alleged by Miskinis, but merely stated that Miskinis's allegations "afford[ed] the court no particular guidance in pronouncing sentence." Upon a failure by the district court to comply with Rule 32(c)(3)(D), the sentence must be vacated and the defendant resentenced. United States v. Fernandez-Angulo, 897 F.2d 1514, 1516 (9th Cir.1990) (en banc). The government argues that resentencing is unwarranted when the alleged factual inaccuracies are frivolous. This argument flies in the fact of our recent holding that strict compliance with Rule 32(c)(3)(D) is required. United States v. Clay, 925 F.2d 299, 305 (9th Cir.1991). Accordingly, we agree with Miskinis that he is entitled to resentencing.
 
 
 22
 Miskinis's conviction is AFFIRMED. The sentence imposed by the district court is VACATED and the case is REMANDED for resentencing in compliance with Fed.R.Crim.P. 32(c)(3)(D).
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Miskinis raises a number of other issues which we resolve in a separate opinion filed concurrently herewith
 
 
 [2]
 Miskinis concedes that Yout warned him that he could go to jail, but argues that the lecture given by Yout on that occasion suggested that the sale of precursor chemicals was not, in itself, illegal. He further maintains that he reasonably interpreted the government's failure to arrest him until ten years after Yout's warning as a signal that his conduct was lawful. We do not think that the content of Yout's lecture negated Yout's personal warning to Miskinis. Assuming that it did, however, there is no evidence that Miskinis acted in reliance on Yout's representations. As noted above, the evidence suggests that Miskinis was all too aware that he was breaking the law. Moreover, even if Miskinis could show that he did in fact rely on some official indication that his conduct was legal, there is no evidence that such reliance was reasonable. United States v. Timmins, 464 F.2d 385, 386-87 (9th Cir.1972)
 
 
 [3]
 We also conclude that two other pieces of testimony which Miskinis challenges for the first time on appeal are of marginal relevance, but that the weight of the evidence against Miskinis clearly precludes a finding of plain error. Because Miskinis's counsel failed to object to either of the challenged statements at trial, we need not consider whether the admission of those statements over objection would have been an abuse of discretion
 
 
 [4]
 Miskinis also raises an insufficiency of the evidence challenge with respect to a fourth count of aiding and abetting the manufacture of methamphetamine, Count Ten of the indictment. However, Count Ten was dismissed by the government prior to trial
 
 
 [5]
 According to Storrs, Nevada was selected as the delivery site because Nevada had not yet enacted a reporting requirement for sales of phenylacetic acid