**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tony GOOD, Defendant–Appellant.**

**No. 92–5773.**

United States Court of Appeals,
Fourth Circuit.

Argued March 11, 1994.

Decided May 27, 1994.

**ARGUED:** Lonnie Dayton Nunley, III, Hunton & Williams, Richmond, V.A, for appellant. William G. Yarborough, III, Asst. U.S. Atty., Greenville, SC, for appellee. **ON BRIEF:** Evelina J. Norwinski, Hunton & Williams, Richmond, VA, for appellant. J. Preston Strom, Jr., U.S. Atty., Lynne M. Ray, Third–Year Law Student, Columbia, SC, for appellee.

Before WILKINSON and WILLIAMS, Circuit Judges, and BRINKEMA, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed and remanded by published opinion. Judge BRINKEMA wrote the opinion, in which Judge WILKINSON and Judge WILLIAMS joined.

## OPINION

BRINKEMA, District Judge:

Tony Good was indicted along with twenty-six codefendants for conspiracy to possess with intent to distribute and to distribute both cocaine, a Schedule II controlled substance, and marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 846 and § 841(a)(1). Under a written plea agreement which limited the quantity of drugs for which Good was responsible to three kilograms of cocaine, Good entered a guilty plea to the conspiracy count. Before his sentencing hearing Good moved to withdraw his guilty plea; then he changed his mind and withdrew the motion. The district court sentenced Good to eighty months incarceration followed by five years of supervised release.

On appeal Good asks us to vacate his plea because it was taken in violation of the requirements of Rule 11 of the Federal Rules of Criminal Procedure and because the district judge discussed a specific guideline range not used at sentencing. Although we find that the district judge failed to comply fully with Fed.R.Crim.P. 11(c) and this Court's holding in *Moore v. United States,* 592 F.2d 753, 755 (4th Cir.1979), we nevertheless conclude that this error was harmless. We also find that the district court did not mislead the defendant as to his possible sentence. We therefore decline to vacate Good's plea and conviction. We must, however, remand this case for correction of the Judgment Order which erroneously states that Good was convicted of a violation of 21 U.S.C. § 846 and § 841(b)(1)(A), whereas given the quantity of drugs involved, Good's conviction was under 21 U.S.C. § 846 and § 841(b)(1)(B).

## I.

Because Good raises purely legal issues, we dispense with a description of the facts underlying the substantive offense. Good ar-

gues that his plea was not voluntarily made because the district court did not advise him of all the effects of his guilty plea, specifically, the effect of supervised release. Our review of the adequacy of the plea is *de novo. Marshall v. Lonberger,* 459 U.S. 422, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

Rule 11 of the Federal Rules of Criminal Procedure mandates that before the court accepts a guilty plea, it must personally question the defendant to ensure that he is entering the plea knowingly and voluntarily. Rule 11(c) further requires that the court ascertain that:

> the defendant understands the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense.

During the plea colloquy concerning representations about possible sentence ranges, the prosecutor told the judge that, given the amount of cocaine involved, the punishment

> ... would be not less than five nor more than forty years in prison, no probation or parole, a fine of two million dollars and a term of supervised release of at least four years in addition to the term of imprisonment.

The district court then addressed Good three times asking him in different ways whether he understood the penalty he faced.

THE COURT: Did you hear that, Mr. Good?

THE DEFENDANT: Yes.

THE COURT: And you and your attorney have discussed that as being the maximum sentence the court could impose. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Knowing what the charge is that you're pleading guilty to and know-

ing what the maximum sentence is, do you still wish to plead guilty?

THE DEFENDANT: Yes.

Although the court correctly advised Good of the possible maximum and minimum penalties and the minimum applicable period of supervised release, the district court failed to explain the significance of supervised release. The United States concedes that this was error under *Moore v. United States,* 592 F.2d 753 (4th Cir.1979).[1]

■ Once a violation of Fed.R.Crim.P. 11 is established, as here, our inquiry must focus on whether the error was harmless. (Fed.R.Crim.P. 11(h)). Under Rule 11(h), only where a violation of the rule affects a defendant's substantial rights is it appropriate to vacate a conviction. *United States v. DeFusco,* 949 F.2d 114, 117 (4th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992).[2] We have generally held that failure to discuss the nature of supervised release is harmless error if the combined sentence of incarceration and supervised release actually received by the defendant is less than the maximum term he was told he could receive. *Moore,* 592 F.2d at 756; *Bell v. United States,* 521 F.2d 713, 715 (4th Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976).

Good argues that when he pled guilty he did not know that his punishment could include additional incarceration if he violated the terms of supervised release and that in a worst case scenario he could be under supervision for life and therefore exposed to incarceration for life. The United States, on the other hand, argues that the error was harmless because the total term of incarceration and supervised release imposed, that is 140 months, did not exceed the statutory maxi-

mum of forty years imprisonment which had been clearly explained to Good during the plea colloquy. *United States v. Iaquinta,* 719 F.2d 83, 85 (4th Cir.1983). *See also Bell v. United States,* 521 F.2d 713 (4th Cir.1975), *cert. denied,* 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976). Moreover, the United States argues that Good's view of the "worst case" scenario is based on an incorrect calculation of the supervised release imposed.

Under 18 U.S.C. § 3583(a) (West Supp. 1993), the court may include as part of any sentence for a misdemeanor or felony "a term of supervised release after imprisonment." Section 3583(b) sets the maximum periods of supervised release.

> Except as otherwise provided, the authorized terms of supervised release are—
>> 1) for a Class A or B felony, not more than five years.[3]

Under the written plea agreement and as reflected in the plea colloquy, Good actually pled guilty to a lesser included offense of the conspiracy count. The conspiracy count in the indictment alleged cocaine quantities exceeding five kilograms of cocaine. However, in paragraph nine of the written agreement, the United States agreed that "the amount of drugs readily provable against the defendant ... is approximately three kilograms of cocaine." During Good's plea colloquy, the prosecutor described his maximum exposure as that applied to offenses involving between 500 grams and five kilograms of cocaine. "That's statutory punishment. It's a violation of 21 U.S.C. § 841(a)(1)(b)(1)(B)."

For a first offender, 21 U.S.C. § 841(b)(1)(B) provides for a sentence of between five and forty years imprisonment and "at least four years" of supervised release. 21 U.S.C. § 841(b)(1)(B) (West Supp.1993). Because the maximum imprisonment penalty

1. In *Moore* this Court instructed that to ensure that a defendant understands the effect of special parole, which was the predecessor to supervised release, the district court must inform a defendant: 1) that a special parole term will be added to any prison term received; 2) the minimum length of any such special parole term and the absence of a statutory maximum; 3) that special parole is entirely different from ordinary parole; and 4) the consequences of a violation of special parole, that is, that the defendant may be returned to prison for the full length of the special parole term. 592 F.2d at 755.

2. Rule 11(h) provides that "any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."

3. By including the words "except as otherwise provided" this statute creates an exception for those special statutes, such as the drug offenses, which carry their own mandatory minimum periods of supervised release. *United States v. LeMay,* 952 F.2d 995 (8th Cir.1991).

exceeds twenty-five years, but is less than life, this offense is classified as a Class B felony. 18 U.S.C. § 3559(a)(1) (West Supp. 1993). The maximum period of supervised release authorized for a Class B felony is five years. 18 U.S.C. § 3583(b)(1).

■ Good fastens his "worst case" scenario on the mistaken belief that 18 U.S.C. § 3583(e)(2) permits unlimited modifications of supervised release. Section 3583 in general grants courts the discretion to modify or revoke conditions of supervised release. Section 3583(e)(2) provides that a court may

> ... extend a term of supervised release if less than the maximum authorized term was previously imposed.

Because 21 U.S.C. § 841(b)(1)(B) speaks only of a minimum period of supervised release, Good argues that the court could conceivably extend his supervised release for life because there is no maximum authorized term, citing as his sole authority *Rodriguera v. United States,* 954 F.2d 1465, 1469 (9th Cir.1992). We respectfully decline to follow the Ninth Circuit on this matter. In both *Rodriguera* and *United States v. Sanclemente–Bejarano,* 861 F.2d 206 (9th Cir.1988), the Ninth Circuit has held that "pursuant to 18 U.S.C. § 3583(e)(2) a supervised release term may also be extended, potentially to a life term, at any time before it expires." 861 F.2d at 209. That conclusion is not supported by the clear language of the applicable statutes and has not been followed by other courts.

Although there is no maximum period of supervised release expressed in the statutory language of 21 U.S.C. § 841(b)(1)(B), as discussed above, the maximum period of supervised release for a first offender found guilty of this Class B felony is five years. This conclusion is consistent with that of the United States Sentencing Guidelines, which provide that:

> If a defendant is convicted under a statute that requires a term of supervised release, the term shall be at least three years but not more than five years or the minimum period required by statute, whichever is greater. United States Sentencing Commission, *Guidelines Manual,* § 5D1.2 (Nov. 1993).

The Commentary to USSG 5D1.2 explains that this section explicitly "applies to statutes, such as the Anti–Drug Abuse Act of 1986, that require imposition of a specific minimum term of supervised release." Good was convicted under a statute that requires a term of "at least four years" supervised release. Therefore, the maximum period of supervised release available in Good's case is not life, but five years. Because Good, in fact, received the maximum available period of supervised release, that is five years, he is not subject to an extension of his supervised release. "[T]he court's sentencing power is constrained by 18 U.S.C. § 3583(b)(1) which does not permit supervised release longer than five years for this offense...." *United States v. Esparsen,* 930 F.2d 1461, 1476–77 (10th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). Because under our interpretation the maximum term of supervised release to which Good could be sentenced is five years, his combined sentence of imprisonment and supervised release does not and cannot exceed the forty-year maximum of which he was advised when he entered his guilty plea. Therefore, the district court's error was harmless.

## II.

■ Good argues that during the plea colloquy the district court led him to expect that he would receive a six-year sentence, whereas in fact, he received eighty months incarceration. During the plea colloquy the district court told Good that it could not "determine the specific guideline that will apply to your case until after a presentence report is prepared." The court also told Good that after the guideline range was determined, the court had "the authority in some circumstances to impose a sentence that is either more severe or less severe than that determined by the guidelines." Good acknowledged understanding what the district court had said. (*Id.*).

The district court then asked Good whether he had received any promises concerning a possible sentence and Good answered, "Six years." The prosecutor immediately volunteered that the parties had stipulated "to the

amount of drugs that would put him [Good] in that six-year category." The prosecutor then explained that he and Good's counsel had "tentatively examined the guidelines and he [Good] understands that he would fall in that range on that amount of drugs." Good's counsel clarified her client's understanding that "six years would be the maximum sentence that could be imposed." The prosecutor added that six years "would be the top that he would get with the two points off for acceptance...." In response to this exchange, the district court consulted with the probation officer.

> THE COURT: Let's just make sure what we're talking about here. Without going through the whole computation, I just wanted to look at the range.
>
> (Bench discussion with probation agent.)

The court then gave Good a sentencing range which the court made clear was merely an estimate.

> Apparently Mr. Good, the important thing is, as I told you and I'm sure I made it clear to you when I asked you about sentence guidelines, people can only make estimates at this time. And it appears, through a quick review of the sentencing table and the guidelines as far as the amount of drugs that the Government is willing to stipulate to, it's their understanding at this point that your offense level, assuming your criminal history is what they think it is—this is a table and I'm sure to some degree your attorney has gone over this with you. But you'd end up with total points of twenty-six, which, applying the sentencing table, would require the court to give you a sentence in a range from sixty-three months, and sixty-three months is five years and three months, to a top of seventy-eight months, which would be six and a half years, that you would fall in that range. And then depending on— what that means, if a defendant falls in that range, it's up to the court where in that range, as far as the number of months, that I could sentence you to. Of

course, did you represent that you, assuming the cooperation continues, that you would ask for a downward departure?

> MR. GOOD: Yes, sir.
>
> THE COURT: And that's something the court would have to consider, whether I would feel like it's appropriate to depart to even less than the sixty-three. Do you understand that?
>
> THE DEFENDANT: Yes, sir, I understand.
>
> THE COURT: All right. So I don't want you under the impression that you are going to get six years exactly. But it appears that six and a half years at this point, under what we figured, would be the tops that I could give you. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right.

The base offense level for a conviction involving three kilograms of cocaine is 28. USSG § 2D1.1(c)(8). At sentencing, in spite of Good's disavowal of responsibility for three kilograms of cocaine, the district court gave him a two-point reduction for acceptance of responsibility, reducing the offense level to 26.[4] That was exactly the same offense level discussed during defendant's plea. Given Good's criminal history category III, the resulting sentencing range was 78 to 97 months. The district court sentenced Good to eighty months, the lower end of the range. Had the district court not given Good the two-point reduction, the sentencing range would have been 97 to 121 months.

Good argues that the district court's earlier "estimate" of the sentencing range misled him into believing that the court would not sentence him to any period of incarceration exceeding 78 months. We find that the district court clearly warned Good that the calculations were only an estimate. In fact, the sentence imposed was fully consistent with the calculations discussed.

This Circuit has held that nothing in Rule 11(c)(1) requires that a district court advise a defendant about the applicable guideline range before accepting a guilty plea. *United States v. DeFusco*, 949 F.2d 114, 119. *See also United States v. Williams*, 977 F.2d 866,

---

4. The district court explained its decision to give the two-point reduction on several factors "... you did plead guilty and I'm going to give you credit for that. And at one point in the case at least you were cooperating and the officer testi-

fied that he thought you were being honest and forthright in your responses at that time, and in that connection it helped wrap up this whole case." (JA 117).

870 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1342, 122 L.Ed.2d 725 (1993). Rule 11(c)(1) requires only that the court clearly advise a defendant of the statutory maximum, any mandatory minimum, and "that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances." Fed.R.Crim.P. 11(c)(1).

■ The district court fully complied with these requirements of Rule 11(c)(1). Given the complexity of guideline sentencing and the number of variables that may affect a final calculation, the safer practice is to avoid discussing specific ranges at all during a plea colloquy. "Any estimate of the guideline range that this district court would give in advance of the presentence report might well turn out to be misleading and could be the basis for a contention that the guilty plea should be invalidated." *United States v. Henry,* 893 F.2d 46, 48–49 (3rd Cir.1990). Nevertheless, under the facts of this case, the district court's discussion of an estimated guideline range was not error.

For these reasons, the district court is AFFIRMED, but the case is remanded with instructions to correct the judgment order to reflect that Good was convicted under 21 U.S.C. § 846 and § 841(b)(1)(B).

*AFFIRMED AND REMANDED.*