**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rob SHORTY, Defendant–Appellant.**

No. 98–2343.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 15, 1998.

Decided Oct. 30, 1998.

K. Tate Chambers (argued), Office of the United States Attorney, Peoria, IL, for Plaintiff–Appellee.

Thomas W. Patton (argued), Office of the Federal Public Defender, Springfield, IL; George F. Taseff, Office of the Federal Public Defender, Peoria, IL, for Defendant–Appellant.

Before BAUER, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Rob Shorty appeals the sentence imposed as a result of the revocation of his supervised release, claiming that 18 U.S.C.

§ 3583(h), which permits a court to revoke a defendant's supervised release and resentence the defendant to a combination of imprisonment and supervised release, violates the Ex Post Facto Clause of the United States Constitution. Shorty argues that § 3583(h) should not be applied to him because Congress enacted the statutory provision after he committed the underlying offense. Shorty believes, at minimum, his case is distinguishable from the facts underlying our decision in *United States v. Withers*, 128 F.3d 1167 (7th Cir.1997), *cert. denied*, — U.S. ——, 119 S.Ct. 79, — L.Ed.2d — (1998) (No. 97–8626) and, at most, believes we should reconsider our decision in that case in light of differing conclusions reached by other circuits on this topic.[1] We do not believe Shorty's situation is distinguishable from that in *Withers* and are not persuaded to reverse that case. Therefore, we affirm the district court's sentence and reaffirm our conclusion in *Withers* that § 3583(h) as applied does not violate the Ex Post Facto Clause.

## I. History

In 1992, Shorty pleaded guilty to conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a), 846. The District Court for the Central District of Illinois, Peoria Division sentenced him to 70 months imprisonment and three years of supervised release. After serving his term of imprisonment, Shorty began serving the three years of supervised release. As a condition of supervised release, the district court forbad Shorty from engaging in several activities, including: (1) owning, purchasing, or possessing a firearm, ammunition, or other dangerous weapon; (2) using alcohol to excess; and (3) purchasing, possessing, using, distributing, or administering any narcotic or other controlled substance. Shorty's probation officer filed a petition alleging Shorty violated the conditions of his supervised release by possessing a firearm, driving under the influence of alcohol, and possessing heroin. Shorty admitted to the possession of heroin, and the government dropped the charges stem-

ming from the other violations. Following the United States Sentencing Guidelines, the district court sentenced Shorty to 21 months imprisonment and an additional three years of supervised release. Shorty appealed.

## II. Standard of Review

During his supervised release revocation and sentencing hearing, Shorty did not raise the issue that the sentence proscribed by the district court violated the Ex Post Facto Clause. The "failure to raise an issue before the district court results in a waiver of that issue on appeal." *United States v. Livingston*, 936 F.2d 333, 335 (7th Cir.1991) (quoting *United States v. Holguin*, 868 F.2d 201, 205 (7th Cir.1989)). When a party has waived an issue in this manner, he may not raise arguments based on the issue for the first time on appeal unless "plain error" occurred. *See United States v. Marvin*, 135 F.3d 1129, 1135 (7th Cir.1998) (citing *United States v. Whaley*, 830 F.2d 1469, 1476 (7th Cir.1987)). The plain error doctrine "allows appellate courts to correct only 'particularly egregious errors' for the purpose of preventing a miscarriage of justice." *Id.* The error must be "conspicuous, at least in hindsight." *United States v. Wynn*, 845 F.2d 1439, 1443 n. 8 (7th Cir.1988) (quoting *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir. 1984)).

We believe the sentence imposed by the district court did not constitute "plain error." However, we do not need to "rest our holding on that ground." *Marvin*, 135 F.3d at 1135. Assuming Shorty had properly preserved this issue for appeal, we would, nonetheless, affirm his sentence.

## III. Analysis

Shorty argues that we should overturn our prior decision in *Withers*, in which we held that § 3583(h) does not violate the Ex Post Facto Clause, in light of the split among the circuits as exemplified by *United States v. Lominac*, 144 F.3d 308 (4th Cir.1998) (holding that application of § 3583(h) to a defen-

---

1. In the brief submitted to this Court, Shorty specifically argued that we should change circuit precedent and overturn our decision in *Withers*.

At oral argument, however, Shorty softened his position, arguing instead that his situation is distinguishable from the defendant in *Withers*.

dant convicted before Congress enacted the provision violates the Ex Post Facto Clause because its application increases the amount of punishment the defendant could receive for the original offense).

■ The Ex Post Facto Clause, U.S. CONST. art. I, § 9, cl. 3, "forbids the application of any new punitive measure to a crime already consummated." *Lindsey v. Washington*, 301 U.S. 397, 401, 57 S.Ct. 797, 81 L.Ed. 1182 (1937). By including this prohibition in the Constitution, the Founding Fathers "aimed at [preventing] laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *California Dept. of Corrections v. Morales*, 514 U.S. 499, 504, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (quoting *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)). As we stated in *Withers*, for a law to run afoul of the Ex Post Facto Clause, it must (1) "be retrospective, that is, it must apply to events occurring before its enactment" and (2) "alter[] the definition of criminal conduct or increase[] the penalty by which a crime is punishable." *Withers*, 128 F.3d at 1169–70 (internal quotation marks and citations omitted).

■ Congress enacted the law under which the district court sentenced Shorty, § 3583(h), after Shorty had committed the initial crime. Thus, it clearly is retroactive.

The question we addressed in *Withers*[2] and Shorty asks us to reconsider is whether § 3583(h) increases the penalty by which his crime is punishable. We do not believe either the total amount of restraint possible under either the previous law or § 3583(h) or the speculative potential of successive revocations constitutes an ex post facto violation.

### A. Punishment Under §§ 3583(e), (h)

Prior to the enactment of § 3583(h), 18 U.S.C. § 3583(e) governed the sentencing of individuals who violated the terms of their supervised release. The provision permits courts to revoke an individual's remaining supervised release and extend the period of the individual's supervised release[3] or require the individual to spend the remainder of the supervised release in prison.[4] 18 U.S.C. § 3583(e). The circuits split as to whether § 3583(e) allowed courts to impose an additional period of supervised release following the individual's release from prison. *Compare United States v. Truss*, 4 F.3d 437 (6th Cir.1993) and *United States v. McGee*, 981 F.2d 271 (7th Cir.1992) (finding § 3583(e)(3) does not permit courts to impose a combined sentence of imprisonment and supervised release when revoking defendant's supervised release) *with United States v. St. John*, 92 F.3d 761 (8th Cir.1996) (holding that § 3583(e)(3) permits courts, when revoking defendant's supervised release, to

---

2. In *Withers*, the district court sentenced Alice Withers to seven months of imprisonment and a period of supervised release after she violated the conditions of the supervised release ordered as punishment for her conviction of possession with intent to distribute cocaine. Even though the combination of § 3583(h) was available only after her conviction, we held that sentencing her under that provision did not rise to the level of an ex post facto violation.

3. Section 3583(e)(2) provides:

The court may . . . extend a term of supervised release if less than the maximum authorized term was previously imposed, and may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration of termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation and the provisions applicable to the initial setting of the terms and conditions of post-release supervision.

18 U.S.C. § 3583(e)(2).

4. Section 3585(e)(3) provides:

The court may . . . revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and to the provisions of applicable policy statements issued by the Sentencing Commission, except that a person whose term is revoked under this paragraph may not be required to serve more than . . . 2 years in prison if the offense was a Class C or D felony.

18 U.S.C. § 3583(e)(3).

impose a combined sentence of imprisonment and supervised release). In *McGee,* we held that once a court revoked a defendant's supervised release and sentenced the defendant to additional imprisonment, the court could not sentence the defendant to an additional term of supervised release following the second term of imprisonment. *McGee,* 981 F.2d at 276. Thus, under the law of this circuit, § 3583(e) provided courts with only two options if an individual violated the terms of the supervised release—(1) imprisonment for the remainder of the initial supervised release sentence or (2) an extension of the period of supervised release.

Congress responded to the split among the circuits that had grown around § 3583(e) by enacting § 3583(h).[5] This provision allows courts to sentence an individual who violates the supervised release by revoking the initial punishment and imposing a new term of imprisonment only, supervised release only, or a combination of both imprisonment and supervised release. In addition, the individual receives no credit for the time already served during the original supervised release. Section 3583(h) also caps the maximum amount of total punishment:

> The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

18 U.S.C. § 3583(h). Thus, § 3583(h) provides courts with three options: (1) additional imprisonment; (2) extension of the period of supervised release; or (3) a combination of additional imprisonment plus additional supervised release, subject to the statutory cap.

On the surface these two provisions, § 3583(e) and § 3583(h), appear to be different, especially in light of *McGee.* However, the question under the Ex Post Facto Clause is not whether the provisions are different, but whether the new provision, when applied to the defendant, increases the amount of punishment he may receive for the crime committed before Congress enacted the provision. Shorty suggests § 3583(h) subjects him to an increase in punishment because (1) the combination of imprisonment and supervised release is "more onerous" than the either/or scenario under § 3583(e) and (2) § 3583(h), unlike § 3583(e), creates the potential for successive revocations, resulting in more prison time and supervised release.

**B. Section 3583(h) Does Not Increase the Total Amount of Restraint Shorty Could Have Received Under § 3583(e)**

Under either § 3583(e) or § 3583(h), Shorty would be subject to the same total amount of restraint and, therefore, sentencing him in accordance with § 3583(h) does not increase the penalty for his crime.

Shorty committed a Class C felony by engaging in a conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a), 846. The court sentenced him to 70 months imprisonment. In accordance with 21 U.S.C. § 841(b)(1)(C), the court also imposed a term of supervised release of three years, much less than the possible maximum of life.[6]

---

**5.** Section 3585(h) provides:

> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection [3583](e)(3), the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.
> 18 U.S.C. § 3583(h).

**6.** Section 841(b)(1)(C) provides:

> Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a term of supervised release *of at least 3 years* in addition to such term of imprisonment . . .

21 U.S.C. § 841(b)(1)(C) (emphasis added). A majority of circuits have held that the "at least 3 years" language establishes a minimum, not a maximum amount of time, even when read in light of 18 U.S.C. § 3583(b), which, for Class C and D felonies authorizes a maximum of three years for supervised release, because the latter provision is modified by the phrase "except as otherwise provided." *See United States v. Page,* 131 F.3d 1173 (6th Cir.1997), *cert. denied,* —— U.S. ——, 119 S.Ct. 77, —— L.Ed.2d —— (1998) (No. 97–8416); *United States v. Garcia,* 112 F.3d 395 (9th Cir.1997); *United States v. Orozco–Rod-*

Shorty, however, violated his supervised release. ·The penalty for this offense, according to statutory provisions, is three years imprisonment and supervised release for a term of life minus the amount of imprisonment to which he is sentenced upon revocation of the original supervised release. The Sentencing Guidelines suggest an amount of imprisonment of 21 to 27 months, but retain the same amount of time for supervised release. *See* U.S. Sentencing Guidelines Manual §§ 7B1.3(a)(2), 7B1.4 (1997); 18 U.S.C. § 3583(g)(1) & (3).

Under § 3583(e), the district court, in revoking Shorty's supervised release, could have "extend[ed] the term of supervised release if less than the maximum authorized term was previously imposed ..." 18 U.S.C. § 3583(e)(2). Or, it could have sentenced him to imprisonment for "all or part of the term of supervised release without credit for time previously served on postrelease supervision," but no more than two years. 18 U.S.C. § 3583(e)(3). Thus, the district court could have extended the term of Shorty's supervised release up to life (because the maximum possible under the statute was life, which was not imposed initially) or imprisoned him for the remaining amount of his supervised release, subject to the maximum cap (2 years).

Under § 3583(h), the court, in revoking Shorty's supervised release, could have sentenced him to either of the possibilities available under § 3583(e)(2) or (3) or to a combination of imprisonment and supervised release. To sentence him to a combination, the court would have needed to impose less than the maximum time of imprisonment possible. Under that option, the court could have sentenced Shorty to a maximum of two years minus one day plus a term of supervised release. The supervised release term could not have exceeded that originally authorized by the statute under which Shorty was originally sentenced. Thus, the maximum amount of supervised release possible would have been life minus the amount of imprisonment imposed during the sentencing for revocation.

Under both the old and the new provisions, the court could have either sentenced him to a maximum of two years in prison or extended his supervised release to life. The new law, however, allows for a third option. The court could have sentenced Shorty to a maximum of two years minus one day imprisonment plus an extension of his supervised release potentially to life minus his time in prison. In Shorty's case, the court sentenced him to 21 months imprisonment plus three years of supervised release. No party argues the sentence is not legitimate under § 3583(h). The question is whether this third option is an increase in punishment. We conclude it is not.

The total amount of restraint placed upon Shorty under either the old or the new law is the same and, therefore, § 3583(h)'s combination option does not increase Shorty's punishment. In this case, the total amount of restraint to which Shorty is subject is life. There is no argument as to the equivalence of the total amount of restraint to which the court could subject Shorty under either provision.[7]

Shorty, relying upon the Fourth Circuit's opinion in *Lominac*, argues, however, that the penalty should be viewed according to the types of punishment available under the statute. The Court in *Lominac* found that "even though the total time of punishment may remain the same, the prison and supervised release mix allowed by § 3583(h) is clearly more onerous than a sentence of the same total length on just supervised release." *Lominac*, 144 F.3d at 315 n. 9.

---

*riguez*, 60 F.3d 705 (10th Cir.1995); *United States v. Eng*, 14 F.3d 165 (2d Cir.1994); *United States v. LeMay*, 952 F.2d 995 (8th Cir.1991); *but see United States v. Good*, 25 F.3d 218 (4th Cir. 1994); *United States v. Kelly*, 974 F.2d 22, 24 (5th Cir.1992). Therefore, § 841(b)(1)(C) sets a floor requirement, leaving the ceiling open, closed only by a defendant's death.

**7.** The Fourth Circuit agrees with this point. "*Withers* is partially correct in stating that 'the defendant is subject to the same total amount of restraint' under § 3583(h) because the total duration of the mixed punishment under that subsection is equal to the maximum total term of supervised release ..." *Lominac*, 144 F.3d at 315 n. 9 (quoting *United States v. Withers*, 972 F.2d 837, 840–41 (7th Cir.1992)).

While the *Lominac* court's argument may be initially attractive, it fails to persuade upon closer inspection. Traditionally, the analysis of laws under the ex post facto doctrine requires courts to examine statutes as a whole. *See United States v. Anderson,* 61 F.3d 1290 (7th Cir.1995) (citing *Dobbert v. Florida,* 432 U.S. 282, 294, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)). The *Lominac* court, however, broke the penalty into subparts. It found that the combination portion is a distinct form of punishment from either imprisonment only or supervised release only. The combination subjects a defendant to an increased penalty, the Fourth Circuit found, because it is more onerous to be subjected to both imprisonment and supervised release rather than one or the other.

Splitting the penalty, however, does not provide an accurate assessment of the punishment a defendant faces. Under the ex post facto doctrine, the Supreme Court bases its analysis of a law on whether it "ameliorates or worsens conditions imposed by its predecessor." *Weaver v. Graham,* 450 U.S. 24, 33, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). In *Weaver,* the Supreme Court explained a court must determine whether the new statute "lengthens the period that someone in petitioner's position must spend in prison." *Id; see also Lynce v. Mathis,* 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (finding the operative question to be whether the statute increases the quantum of punishment to which a defendant is subject); *Miller v. Florida,* 482 U.S. 423, 431, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (holding that application of a revision of Florida's sentencing guidelines applied to a defendant convicted before the legislature passed the guidelines violated the Ex Post Facto Clause because the new guidelines increased the length of the defendant's punishment). Under the laws applicable to Shorty, the maximum length of imprisonment remains the same as does the maximum length of supervised release. Under either provision, the maximum length of punishment—the total amount of restraint to which Shorty is subject—is life.

Shorty faces no new burdens under § 3583(h); indeed he faces the same burdens under § 3583(h) as he did under § 3583(e).

Courts refrain from applying a statute retroactively to avoid the unfairness that results from imposing new burdens on people's conduct after they have engaged in that conduct ... Unfairness results because people rely on the existing legal provisions in planning and conducting their affairs.

*Chow v. Immigration and Naturalization Serv.,* 113 F.3d 659, 665 (7th Cir.1997) (internal citation omitted). The new provision is not unfair; it does not impose a new burden upon Shorty for his original offense. The punitive measures are still imprisonment or supervised release. The maximum penalty is still two years imprisonment or life on supervised release. Just as § 3583(h) does not increase the maximum total amount of restraint, it does not create a new punitive measure. Instead, it merely provides courts with the additional option that exposes a defendant to a different combination of the existing punitive measures. The maximum amount of punishment Shorty was on notice of facing under the old statute was life. It is the same under the new statute. *See Kurzawa v. Jordan,* 146 F.3d 435, 446 (7th Cir. 1998) ("If there is no change in punishment from the punishment in effect when the crimes were committed, the defendant cannot claim that he or she received insufficient warning of the punishment prescribed for the crime perpetrated.") (internal citation omitted). Therefore, as applied to Shorty, § 3583(h) does not violate the Ex Post Facto Clause.

### C. Potential Successive Revocations Is Too Speculative

Shorty also argues that he should not have been sentenced under § 3583(h) because the new provision creates the possibility of successive revocations, which violates the Ex Post Facto Clause. In addition, he argues that the provision subjects him to additional imprisonment or supervised release time with no credit for time already spent on supervised release if he violates the conditions of his supervised release while serving the subsequent supervised release periods. We disagree with his analysis.

The risk of successive revocations under § 3583(h), which were not possible under § 3583(e), is too speculative to constitute an ex post facto violation. In *Withers,* we explained that "we ... consider the 'practical, as opposed to purely theoretical' effect of § 3583(h)'s application to [the defendant's] sentence because 'the ex post facto prohibition does not foreclose every change in the law that possesses some imaginable risk of adversely affecting an inmate's punishment.'" *Withers,* 128 F.3d at 1171 (quoting *Hamm v. Latessa,* 72 F.3d 947, 957 (1st Cir.1995) (internal quotation marks and citations omitted)). Evaluating a retroactive law requires determining "whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Morales,* 514 U.S. at 509, 115 S.Ct. 1597.

> The mere possibility that [a defendant] may (1) violate the conditions of [his] renewed term of supervised release at some point in the future, (2) have this term revoked, and (3) lose credit for the time spent on the prior revoked terms of supervised release does not produce a sufficient risk of increasing [his] punishment.

*Withers,* 128 F.3d at 1172.

The thrust of Shorty's position is that § 3583(h) contains no limitation on successive revocations and, thus, subjects any defendant sentenced under it to the possibility of future punishments, which would, in sum, result in an increase in the total amount of restraint for the crime committed. Shorty is correct at one level; however, he fails to demonstrate how the possibility or risk of future punishment he faces under § 3583(h) rises above the standard established by the Supreme Court in *Morales.* "A change in the law does not reach this 'threshold risk level ... where the change 'creates only the most speculative and attenuated possibility' of increased punishment." *Withers,* 128 F.3d at 1171 (quoting *United States v. McGee,* 60 F.3d 1266, 1271 (7th Cir.1995) (quoting *Morales,* 514 U.S. at 509, 115 S.Ct. 1597)). Whether Shorty will be subject to additional imprisonment depends on *if* he violates the terms of his supervised release and *if* the district court decides to impose a renewed sentence with no credit and *if* that sentence contains additional supervised release time and *if* under that sentence Shorty violates the terms of his supervised release. Too many "ifs" must occur for the risk to become a reality. Therefore, we reaffirm our holding in *Withers* that the "theoretical and speculative nature of any potential prejudice," *Withers,* 128 F.3d at 1172, caused by the retroactive application of § 3583(h) to a defendant does not violate the Ex Post Facto Clause.

## IV. Conclusion

In choosing to sentence Shorty under § 3583(h) rather than under § 3583(e), the district court did not violate the Ex Post Facto Clause. First, the amount of total restraint to which Shorty was subject remained constant. Second, the potential for additional successive revocation sentences was too remote and too theoretical to rise to the level of a violation. We, therefore, AF-FIRM the district court's decision.