**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael NEWBORN, Defendant–
Appellant.**

No. 01–5999.

United States Court of Appeals,
Sixth Circuit.

Aug. 8, 2003.

558

Before BATCHELDER, MOORE, and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Defendant, Michael Newborn, appeals from the judgment of sentence entered by the district court on August 3, 2001, sentencing Defendant to twenty-six years of imprisonment and five years of supervised release following Defendant's guilty plea conviction for possession with intent to distribute and distribution of Dilaudid[1] in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. For the reasons set forth below, we **AFFIRM** Defendant's sentence.

## BACKGROUND

The Federal Bureau of Investigation ("the FBI"), along with the Memphis Police Department, began a narcotics and money laundering investigation of Defendant in January of 2000. In August of 2000, Jerry Collier, a former Dilaudid dealer, became a confidential informant for the FBI and agreed to assist in the investigation. Collier assisted the FBI in making undercover purchases of Dilaudid from Defendant on September 27, 2000; November 21, 2000; December 7, 2000; and January 17, 2001. Defendant was arrested as he attempted to leave the scene of the January 17, 2001 transaction. Most of the transactions were arranged and carried out by Defendant's accomplice, Leroy Mallory. A FBI agent tape recorded the transactions.

On February 13, 2001, a federal grand jury returned a five-count indictment against Defendant. Count One charged Defendant with conspiring to distribute Dilaudid in violation of 21 U.S.C. § 841(a)(1). Counts Two through Five charged Defendant with possession with intent to distribute and distribution of Dilaudid in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Defendant was arraigned on February 21, 2001, at which time he pleaded not guilty. On May 2, 2001, Defendant entered a plea agreement, withdrew his not guilty plea, and entered a guilty plea to Counts Two through Five.

The United States Probation Office filed a Presentence Investigation Report

---

1. Dilaudid is the trademark name for hydromorphone hydrochloride. *See PHYSICIANS' DESK REFERENCE* 1348 (52d ed.1998). Dilaudid is a narcotic analgesic, which is classified as a Schedule II controlled substance in 21 U.S.C. § 812. *See id.* at 1348, 1349.

("PSR") on June 20, 2001. Using the information Collier and Mallory provided to the FBI, the PSR calculated Defendant's relevant conduct as involving 441,600 Dilaudid tablets, which it converted to a marijuana equivalency of 99,360 kilograms. Based on this quantity, the PSR determined Defendant's base offense level to be 38 under United States Sentencing Commission, *Guidelines Manual,* § 2D1.1(c)(1) (Nov.2002). The PSR then applied a four-point enhancement to Defendant's base offense level for his role as an organizer or leader of criminal activity involving five or more participants under USSG § 3B1.1(a). However, the PSR subtracted three points for his acceptance of responsibility, resulting in a total offense level of 39. In addition, the PSR determined that Defendant had a criminal history of category I. The PSR therefore recommended a sentencing range of 262 to 327 months of imprisonment.

Defendant filed objections to the PSR on July 23, 2001. The probation office filed an Addendum to the PSR on July 26, 2001. Using only the information Mallory provided to the FBI, the Addendum recalculated Defendant's relevant conduct as involving 141,600 Dilaudid tablets, which it converted to a marijuana equivalency of 31,860 kilograms. Because the adjusted drug quantity carried a base offense level identical to that suggested in the PSR, the Addendum did not change the sentencing range recommended in the PSR.

The district court held a sentencing hearing on August 2 and 3, 2001. During the sentencing hearing, the government offered as evidence the tape recordings of the transactions and the testimony of Collier and Mallory, both of whom had pleaded guilty to separate indictments dealing with their participation in Defendant's criminal activity.

Collier testified that he and his brother Barry each began purchasing approximately 400 to 600 Dilaudid tablets per week in 1991 or 1992 from Defendant. This continued until 1994 or 1995 at which time Collier and his brother (collectively "the Colliers") each began purchasing approximately 5,000 Dilaudid tablets per month from Defendant. Defendant would travel to New York once a month and upon returning he would supply each of the Colliers with approximately 5,000 Dilaudid tablets. This continued until June or July of 1999 when Collier kept 5,000 Dilaudid tablets without paying Defendant. Collier owed Defendant $45,000 for the 5,000 Dilaudid tablets. Thereafter, Defendant agreed to sell Collier 1,000 Dilaudid tablets at a time as long as a portion of the money paid by Collier was used to pay his debt. After July of 1999, Collier purchased approximately 2,000 to 4,000 Dilaudid tablets per month from Defendant until his arrest in April of 2000. After his arrest, Collier, as a confidential informant, purchased approximately 1,400 Dilaudid tablets from Defendant.

Mallory testified that he began delivering approximately 100 Dilaudid tablets at a time for Defendant in 1997. This continued until the end of 1997 or the beginning of 1998 at which time Malloy began making deliveries to the Colliers. Mallory delivered approximately 5,000 Dilaudid tablets every four to six weeks to Collier's brother until early 1999, and to Collier until April of 2000. In addition to delivering to the Colliers, Mallory delivered approximately 200 Dilaudid tablets per week to various other buyers for Defendant from 1998 to April of 2000. After Collier's arrest, Mallory delivered approximately 700 Dilaudid tablets to Collier for Defendant, and sold Collier approximately 400 Dilaudid tablets he obtained from a supplier named "Gerald." In total, Mallory delivered approximately 150,000 Dilaudid

tablets for Defendant. Mallory also rented cars for Defendant on a regular basis, which Defendant drove to New York. Defendant paid Mallory $0.50 to $1.00 per Dilaudid tablet he delivered.

Defendant testified that he began selling approximately 200 to 500 Dilaudid tablets every three to four months to Collier in 1994 or 1995. This continued until 1997 at which time he began selling Collier 5,000 Dilaudid tablets every three to four months. This continued until June of 1999 when Collier claimed that he had lost 5,000 Dilaudid tablets Defendant had sold to him. Collier owed Defendant $30,000 for the 5,000 Dilaudid tablets he had lost. Defendant did not sell Collier any more Dilaudid tablets until after Collier was arrested. During the undercover investigation, Defendant sold Collier only small quantities of Dilaudid two or three times because Defendant's New York supplier had cut him off. Defendant, however, referred Collier to other suppliers. Defendant further testified that he never instructed Mallory to deliver Dilaudid to Collier.

At the conclusion of the sentencing hearing, the district court credited the testimony of Collier and Mallory, and adopted the PSR's factual findings that Defendant's relevant conduct involved more than 141,600 Dilaudid tablets and that Defendant was the organizer or leader of criminal activity involving five or more participants. The district court then sentenced Defendant to twenty years of imprisonment on Counts Two, Three, and Four, each count running concurrently, and six years of imprisonment on Count Five, running consecutively to the other counts. In addition, the district court sentenced Defendant to five years of supervised release.

On August 6, 2001, Defendant timely filed a notice of appeal.

## DISCUSSION

## I. THE SENTENCING GUIDELINES

We review a district court's application of the Sentencing Guidelines *de novo,* and the district court's factual findings thereunder for clear error. *United States v. Dupree,* 323 F.3d 480, 484 (6th Cir.2003).

### A. The Organizer or Leader Enhancement

■ Section 3B1.1 of the Sentencing Guidelines provides:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

USSG § 3B1.1. Commentary thereunder provides: "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." USSG § 3B1.1, cmt. n. 2. In cases where the applicability of an enhancement provision is contested, the government bears the burden of establishing the enhancement factors by a preponderance of the evidence. *United States v. Silverman,* 889 F.2d 1531, 1535 (6th Cir.1989).

The district court held that a four-point enhancement under § 3B1.1(a) was warranted because the tape recordings and the testimony of Collier and Mallory sup-

ported the government's contention that Defendant was the organizer and leader of criminal activity involving five or more participants. The district court reasoned that the evidence demonstrated that (1) Defendant obtained large quantities of Dilaudid from a New York supplier pursuant to a credit arrangement; (2) Defendant sold Dilaudid to the Colliers and various other buyers; (3) Defendant supervised Mallory by instructing him to deliver specific quantities of Dilaudid to the Colliers and various other buyers; (4) Defendant collected money owed for the Dilaudid; and (5) Defendant paid money to the New York supplier.

Although Defendant does not dispute that the criminal activity involved five or more participants, Defendant argues that the four-point enhancement under § 3B1.1(a) was not warranted because the evidence indicated that he was not the organizer or leader of the criminal activity.

In *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir.2000), we stated that in determining whether a defendant qualifies as an organizer or leader under § 3B1.1, the district court should consider whether the defendant exercised decision-making authority, recruited accomplices, claimed a right to a larger share of the fruits of the crime, took a leadership role in planning the details of the offense, and exercised a significant degree of authority or control over other criminal participants. In *Vandeberg*, two co-defendants conspired to transport stolen property interstate. Despite the government's acquiescence in the defendant's position that he was not the organizer or leader of the conspiracy, the district court applied a two-point enhancement to the defendant's base offense level under § 3B1.1(c), without articulating a factual basis. *Id.* On appeal, we held that the district court erred in applying the two-point enhancement because the defendant neither exercised decision-making au-

thority, recruited the co-defendant, claimed a right to a larger share of the fruits of the conspiracy, took a leadership role in planning the details of the conspiracy, nor exercised any degree of authority or control over the co-defendant. *Id.*

*Vandeberg* is factually distinguishable from the facts at bar. Unlike the defendant in *Vandeberg*, Defendant exercised decision-making authority as to whom he sold Dilaudid and as to the price for which he sold it; he claimed a right to a larger share of the fruits of the crime inasmuch as he took profits from the Dilaudid he purchased from the New York supplier and later sold to the Colliers and various other buyers; he took a leadership role in planning the details of the offense by organizing and scheduling the transactions; and he exercised a significant degree of control over Mallory by paying him for delivering Dilaudid to the Colliers and various other buyers.

We hold that Defendant was the organizer and leader of the criminal activity. *See United States v. Castro*, 908 F.2d 85, 90 (6th Cir.1990) (holding that the defendants qualified as organizers and leaders under § 3B1.1(a) because testimony at trial indicated that the defendants instructed co-conspirators to transport cocaine interstate, and that the defendants employed others to travel in cars equipped with secret compartments to transport cocaine and cash proceeds from the sale of cocaine interstate); *United States v. Feinman*, 930 F.2d 495, 500 (6th Cir.1991) (holding that the defendant qualified as an organizer and leader under § 3B1.1(a) because testimony at trial indicated that the defendant recruited a co-conspirator to transport marijuana between California and Ohio, and that the defendant made arrangements with marijuana suppliers in California for the distribution of marijuana in Akron, Ohio); *United States v. Hernandez*, 227 F.3d 686, 700 (6th Cir.2000)

(holding that the defendant qualified as an organizer and leader under § 3B1.1(a) because the defendant instructed co-conspirators to make payments, took profits from transactions, paid a co-conspirator's utilities, and was involved in planning and organizing the marijuana conspiracy). We therefore conclude that the district court did not err in holding that the four-point enhancement under § 3B1.1(a) was warranted.

## B. The Drug Quantity Enhancement

■ Section 2D1.1(c)(1) of the Sentencing Guidelines requires that a defendant, who is responsible for 30,000 kilograms or more of marijuana or its equivalency, be assigned a base offense level of 38. *See* USSG § 2D1.1(c)(1).

Using the information Collier and Mallory provided to the FBI, the PSR calculated Defendant's relevant conduct as involving 441,600 Dilaudid tablets, which it converted to a marijuana equivalency of 99,360 kilograms. The Addendum to the PSR recalculated Defendant's relevant conduct, using only the information Mallory provided to the FBI, as involving 141,600 Dilaudid tablets, which it converted to a marijuana equivalency of 31,860 kilograms. Both the PSR and the Addendum determined Defendant's base offense level to be 38 under § 2D1.1(c)(1).

After crediting the testimony of Collier and Mallory, the district court separately considered their testimony, and found that Defendant's relevant conduct involved more than 141,600 Dilaudid tablets. The district court then assigned Defendant a base offense level of 38 under § 2D1.1(c)(1).

Defendant argues that the district court erred in estimating the quantity of Dilaudid attributable to him because the estimate was based on speculation and unreliable testimony. Defendant argues that the testimony of Collier and Mallory was unreliable since their testimony indicated that they used drugs extensively during relevant time periods and, as a result, did not remember the exact quantities of Dilaudid they obtained from Defendant nor the exact dates on which they obtained the quantities of Dilaudid.

We hold that the district court did not err in estimating the quantity of Dilaudid attributed to Defendant. *See United States v. Owusu*, 199 F.3d 329 (6th Cir. 2000). In *Owusu*, we held that the district court did not err in estimating the quantity of crack cocaine attributable to the defendant since the estimate was supported by competent evidence on the record. *Id.* at 338. Based solely on the testimony of a co-conspirator, the district court in *Owusu* estimated that 195 grams of crack cocaine was attributable to the defendant. *Id.* at 339. The co-conspirator testified that the defendant sold two ounces of crack cocaine to a crack house several times between 1988 and 1989. *Id.* The co-conspirator also testified that the defendant sold him one ounce of crack cocaine "every week or so" for two to three months in 1993. *Id.* On appeal, we stated that we will defer to the district court's credibility determination unless it has no foundation. *Id.* We reasoned that the district court's determination that the co-conspirator's testimony was credible was not without foundation because his testimony was consistent with other testimony on the record and because he had no reason to single the defendant out for the transactions. *Id.* We therefore concluded that the district court "properly erred on the side of caution" and included two ounces of crack cocaine, 56.7 grams, in the total attributed amount of 195 grams. *Id.*

Like the co-conspirator in *Owusu*, Collier and Malloy estimated the dates of the transactions and the quantities involved therein. For instance, Collier testified that he and his brother each began pur-

chasing approximately 400 to 600 Dilaudid tablets per week in 1991 or 1992 from Defendant. This continued until 1994 or 1995 at which time Collier and his brother each began purchasing approximately 5,000 Dilaudid tablets per month from Defendant. This continued until June or July of 1999. Thereafter, Collier purchased approximately 2,000 to 4,000 Dilaudid tablets per month from Defendant until his arrest in April of 2000. After his arrest, Collier, as a confidential informant, purchased approximately 1,400 Dilaudid tablets from Defendant. The tape recordings corroborated Collier's testimony regarding the 1,400 Dilaudid tablets he purchased as a confidential informant.

Mallory testified that he began delivering approximately 100 Dilaudid tablets at a time for Defendant in 1997. This continued until the end of 1997 or the beginning of 1998 at which time Mallory began making deliveries for Defendant to the Colliers. Mallory delivered approximately 5,000 Dilaudid tablets every four to six weeks to Collier's brother until early 1999, and to Collier until April of 2000. In addition to delivering to the Colliers, Mallory delivered approximately 200 Dilaudid tablets per week to various other buyers for Defendant from 1998 to April of 2000. After Collier's arrest, Mallory delivered approximately 700 Dilaudid tablets to Collier for Defendant. In total, Mallory delivered approximately 150,000 Dilaudid tablets for Defendant. The tape recordings corroborated Mallory's testimony regarding 700 Dilaudid tablets he delivered to Collier for Defendant in September of 2000.

We find that the district court's determination that the testimony of Collier and Malloy was credible is not without foundation because their testimony was consistent and partially corroborated by the tape recordings. *See id.; United States v. Baro,* 15 F.3d 563, 569 (6th Cir.1994) (stating that evidence of drug quantity "must have a minimal level of reliability beyond mere allegation") (internal quotations and citations omitted). Although Collier and Mallory did not remember the exact dates of the transactions or the exact quantities involved, their testimony indicated that Defendant likely sold more than 141,600 Dilaudid tablets over a lengthy period of time. *See United States v. Walton,* 908 F.2d 1289, 1302 (6th Cir.1990) (holding that a district court may hold a defendant accountable for an estimated quantity of drugs where the defendant is more likely than not responsible for a quantity greater than or equal to that quantity). We therefore conclude that the district court properly estimated that 141,600 Dilaudid tablets were attributable to Defendant, which converts to a marijuana equivalency of 31,860 kilograms, resulting in a base offense level of 38. *See* USSG § 2D1.1(c)(1).

## II. THE FIVE–YEAR TERM OF SUPERVISED RELEASE

■ We review a defendant's challenge to the length of supervised release raised for the first time on appeal for plain error. *See Owusu,* 199 F.3d at 339. Plain error is " 'an egregious error, one that directly leads to a miscarriage of justice.' " *United States v. Frazier,* 936 F.2d 262, 266 (6th Cir.1991) (quoting *United States v. Busacca,* 863 F.2d 433, 435 (6th Cir.1988)). To establish plain error, the defendant must prove: (1) an error occurred in the district court, (2) the error was plain, (3) the error affected a substantial right of the defendant, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir. 1998).

Title 21 U.S.C. § 841(b)(1)(C) provides in relevant part that "[a]ny sentence imposing a term of imprisonment under this paragraph shall, in the absence of [ ] a prior conviction, impose a term of super-

vised release of at least three years in addition to such term of imprisonment...." Title 18 U.S.C. § 3583(b)(2) provides in relevant part that "[e]xcept as otherwise provided, the authorized term of supervised release ... for a Class C ... felony is not more than three years."

In *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held that any fact that serves to enhance the sentence of a defendant beyond the statutory maximum, aside from prior convictions, must be proven beyond a reasonable doubt. Defendant argues that the rule in *Apprendi* is invoked because his five-year term of supervised release exceeds the statutory maximum of three years. Specifically, Defendant argues that § 3583(b)(2) limits the term of supervised release a district court may impose under § 841(b)(1)(C) to three years. In support of his argument, Defendant cites *United States v. Meshack*, 225 F.3d 556, 578 (5th Cir.2000) (holding that § 3583(b) limits the term of supervised release a district court may impose under § 841(b)(1)(C) to three years), *overruled sub silentio on other grounds by United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).[2]

We are not persuaded by this Fifth Circuit case because the majority of the other circuits to have addressed this issue has held that § 3583(b) does not limit the term of supervised release a district court may impose under § 841(b)(1)(C). *See United States v. Sanchez*, 269 F.3d 1250, 1287 (11th Cir.2001); *United States v. Barragan*, 263 F.3d 919, 925 (9th Cir.2001); *United States v. Pratt*, 239 F.3d 640, 648 (4th Cir.2001); *United States v. Heckard*,

238 F.3d 1222, 1237 (10th Cir.2001); *United States v. Aguayo–Delgado*, 220 F.3d 926, 933 (8th Cir.2000); *United States v. Shorty*, 159 F.3d 312, 315–16 (7th Cir. 1998); and *United States v. Eng*, 14 F.3d 165, 173 (2nd Cir.1994); *but see United States v. Good*, 25 F.3d 218, 221 (4th Cir. 1994) (finding that 18 U.S.C. § 3583(b)(1) constrains the term of supervised release which may be ordered under 21 U.S.C. § 841(b)(1)(B)).

In *United States v. Page*, 131 F.3d 1173, 1177–80 (6th Cir.1997), *abrogated on other grounds, Johnson v. United States*, 529 U.S. 694, 700, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000), we agreed with the other circuits when stating:

> We believe it is necessary to interpret the words "[e]xcept as otherwise provided," at the beginning of 18 U.S.C. § 3583(b), and the words "at least" in 21 U.S.C. § 841(b)(1)(C) in a logical manner. We believe the opinions of the Second, Eighth, Ninth and Tenth [C]ircuits correctly analyze[d] the wording of the two statutes, but the opinions of the Fourth and Fifth Circuits ignore the "except as otherwise provided" and "at least" language, and therefore fail to reconcile the two statutes by giving effect to the wording in each.
>
> ...
>
> In regard to the present case, section 841(b)(1)(C) provides for a term of supervised release of "at least three years," not simply "three years." We believe that this language indicates an intent on the part of Congress to allow terms of supervised release of more than three years. There is no language in section 841(b) to suggest that Congress intended the authorized terms of super-

---

**2.** Defendant also argues that he was prejudiced because he did not know that his sentence would be enhanced based on what he did in the past. Defendant's argument is without merit because he previously acknowledged before the district court that he understood that all of his relevant conduct would be considered in calculating the sentencing range.

vised release to be limited by section 3583(b).

*See United States v. Nance,* 2002 WL 1359325, *4, 40 Fed.Appx. 59 (6th Cir. June 20, 2002). Accordingly, Defendant's five-year term of supervised release does not exceed the maximum term of supervised release permitted by § 841(b)(1)(C), and the rule in *Apprendi,* therefore, does not apply. *See id.* We therefore conclude that the district court's imposition of a five-year term of supervised release was proper.

## CONCLUSION

For the forgoing reasons, Defendant's sentence is **AFFIRMED.**